IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRITTANY L. JONES**, | Case No. 3:15-cv-00127-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | |
| Defendant. | |

Bruce W. Brewer, LAW OFFICES OF BRUCE W. BREWER, P.C., P.O. Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Herbert, Assistant United States Attorney, U.S. Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204, L. Jamala Edwards, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ms. Brittany L. Jones seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The Commissioner concedes error and moves to remand for further proceedings. Dkt. 20. For the following reasons, the Court

grants the Commissioner's motion, but reverses and remands for calculation of an immediate award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for SSI on May 13, 2011, alleging disability beginning February 12, 1993. AR 165. She was 18 years old at the time the SSI application was filed. *Id.* She alleges disability due to the following medical conditions: learning disabilities, cognitive delay, bilateral profound deafness (sensory neural), diabetes mellitus II, anxiety, high blood pressure, tachycardia, and other medical conditions. AR 154. Plaintiff graduated high school in 2012 with a modified diploma.[1] AR 35. While in school, she attended special education classes. *See generally* AR 167-568. Plaintiff has less than 400 dollars of lifetime earnings. AR 148. Plaintiff volunteers to assist in her mother's preschool class on a regular basis, AR 50, and she participated in a program for special needs students to volunteer at City Hall. AR 58. Plaintiff currently lives with her parents at their home. AR 49.

The Commissioner denied Plaintiff's application initially on September 21, 2011, and upon reconsideration on January 20, 2012. AR 94, 101. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 103. Plaintiff appeared for a hearing on August 26, 2013, and was represented by counsel. AR 11. At the hearing, the ALJ heard testimony from Plaintiff, her mother Rebecca L. Jones, and vocational expert ("VE") Jenipher S. Gaffney. AR 27-68. After considering all the evidence in the record, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. AR 21.

Plaintiff petitioned the Appeals Council for review of the ALJ's decision. AR 5. On November 20, 2014, the Appeals Council denied the request for review, rendering the ALJ's

---

[1] Plaintiff's modified diploma is not equivalent to a standard high school diploma. AR 619. Plaintiff would need to obtain a General Educational Development ("GED") certificate in order to enroll in community college. *Id.*

decision the final decision of the Commissioner. AR 1. Plaintiff now seeks review of the ALJ's decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 13, 2011, the application date. AR 13. At step two, the ALJ found that Plaintiff had the following severe impairments: "history of cochlear implant, history of reticular dysgenesis, organic bra[i]n syndrome, anxiety disorder, and affective disorder." *Id.* The ALJ found that other symptoms and complaints appear periodically in Plaintiff's medical treatment records, including mild hypothyroidism, well-controlled diabetes, and hypertension. AR 13-14. The ALJ concluded that none of these other symptoms and complaints, including mental limitations, constituted a severe medically determinable impairment. *Id*. At step three, the ALJ ruled that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. AR 14-16.

The ALJ next assessed Plaintiff's RFC. The ALJ found that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. § 416.967(b). AR 16. Specifically, the ALJ found that Plaintiff: (1) should avoid exposure to concentrated environmental irritants and contact with work hazards; (2) should have no contact with the public; (3) should be limited to simple, routine, predictable tasks; (4) should not work where precise hearing is required; (5) should avoid exposure to loud background noises; (6) should not receive more than the occasional verbal instruction and not use the telephone more than occasionally; and (7) should have only have brief interactions with co-workers and supervisors. *Id.*

In formulating the RFC, the ALJ found that Plaintiff's testimony "[was] not entirely credible." AR 17. The ALJ reviewed the myriad medical opinions of the treating, examining and reviewing medical providers. AR 17-18. In particular, the ALJ gave the opinion of Dr. Mina

Driver, Psy.D. "some weight." AR 18. The ALJ also reviewed the evidence from numerous lay persons. AR 18-20.

At step four, the ALJ determined that Plaintiff had no past relevant work. AR 20. At step five, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs—such as a room cleaner, laundry folder and retail marker—that exist in significant numbers in the national economy. AR 21. Thus, the ALJ found that Plaintiff is not disabled. AR 21.

## DISCUSSION

Plaintiff alleges the following errors: (1) the ALJ failed to find Plaintiff disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C ("Listing 12.05C"); (2) the ALJ improperly rejected Plaintiff's testimony and lay testimony; (3) the ALJ did not properly credit portions of the testimony of Dr. Kristin Wallis, M.D., and Dr. Mina Driver, Psy.D. The Commissioner concedes that the ALJ erred in assessing the weight that should be given to Dr. Driver's opinion and in assessing whether Plaintiff met Listing 12.05C. The Commissioner argues that these errors require a remand for further proceedings. Because the Court finds that the record is fully developed with respect to whether Plaintiff meets Listing 12.05C, the Court remands for an award of benefits and does not reach Plaintiff's remaining allegations of error.

**A. Listing 12.05C**

Plaintiff argues that she is disabled because she meets Listing 12.05C. Listing 12.05C refers to intellectual disabilities. To meet Listing 12.05C, a claimant must demonstrate "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an intelligence quotient ("IQ") score of 60 to 70[2]; and (3) a physical or other

---

[2] To meet Listing 12.05C, a claimant must have "a valid verbal, performance, *or* full-scale IQ of 60 through 70 . . . ." Listing 12.05C (emphasis added). Here, the relevant IQ score is Plaintiff's verbal IQ score of 70.

mental impairment causing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Plaintiff was given the Wechsler Adult Intelligence Scale, Fourth Edition, battery of tests. AR 710. Plaintiff achieved, among other scores, a verbal IQ of 70. The ALJ found this IQ score to be invalid. AR 15.

The Commissioner concedes that the ALJ did not properly evaluate whether Plaintiff met Listing 12.05C. Specifically, the Commissioner concedes that the ALJ did not properly analyze Plaintiff's deficits in adaptive functioning.[3] The ALJ noted that Plaintiff's adaptive functioning was inconsistent with a verbal IQ score of 70, but did not fully address Plaintiff's adaptive functioning.

The Commissioner does not specifically discuss the ALJ's conclusion that Plaintiff's verbal IQ score of 70 was invalid. The Commissioner instead focuses on the ALJ's error in analyzing Plaintiff's deficits in adaptive functioning, arguing that remand is warranted so that the ALJ can "fully discuss or analyze" Plaintiff's deficits in adaptive functioning relevant to Listing 12.05C. Arguing for a remand to consider deficits in adaptive functioning is, however, inconsistent with accepting the ALJ's finding disregarding Plaintiff's verbal IQ score, because if the ALJ permissibly rejected Plaintiff's verbal IQ score, there would be no need to perform an analysis of Plaintiff's deficits in adaptive functioning—Plaintiff would fail to meet Listing 12.05C's requirement of an IQ score of 60 through 70. Accordingly, the Court first addresses Plaintiff's verbal IQ score and then considers the other criteria of Listing 12.05C.

.

---

[3] Deficits in adaptive functioning refer to a "failure to meet developmental and sociocultural standards for personal independence and social responsibility." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 33 (5th ed. 2013). They limit functioning in at least one activity of daily life, including communication and social participation in school, work, or other environments. *Id*.

### 1. Plaintiff's verbal IQ score of 70

Plaintiff argues that the ALJ failed to provide a proper basis for concluding that her verbal IQ test score of 70 was invalid. The Ninth Circuit has held that an ALJ may find an IQ score to be invalid. *See Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008). However, the Ninth Circuit has "never decided what information is appropriately looked to in deciding [the] validity" of IQ scores. *Id.* at 475 n.6 (9th Cir. 2008). Decisions from other courts indicate that the ALJ may rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score. *Id.*

Dr. Mina Driver examined Plaintiff on December 16, 2011. AR 708. Dr. Driver conducted a comprehensive psychological examination of Plaintiff, including the Wechsler Adult Intelligence Scale, Fourth Edition, battery of tests. AR 710. Plaintiff achieved a verbal IQ of 70, a perceptual reasoning IQ of 98, a working memory IQ of 69, and a processing speed IQ of 100. *Id.* These scores yield a full scale IQ ("FSIQ") of 80. *Id.*

The ALJ appears to reject Plaintiff's verbal IQ score because Plaintiff has a hearing impairment. The ALJ noted that that Plaintiff appeared to be reading lips and relying on body language to figure out what Dr. Driver was saying.[4] AR 15-16. The ALJ also noted that Dr. Driver had noted that Plaintiff's low verbal IQ score likely resulted from Plaintiff's hearing problems. AR 15. The ALJ appears to have misunderstood Dr. Driver's caveats and comments regarding the validity of Plaintiff's IQ scores.

As an initial matter, the Court notes that Dr. Driver commented that she obtained a valid assessment of Plaintiff's neurocognitive functioning. AR 710. Dr. Driver noted that due to

---

[4] The ALJ is correct that Dr. Driver documented that Plaintiff was apparently relying on body language to figure out what Dr. Driver was saying. AR 710. However, Dr. Driver did not document any instance of lip reading by the Plaintiff. *Id.*

Plaintiff's "hearing loss, the results of the evaluation should be interpreted with caution." *Id.* Dr. Driver then stated that:

> [t]here was a significant difference between [Plaintiff's] Verbal Comprehension IQ and Perceptual Reasoning IQ. A difference of this magnitude (28 points) is significant, suggesting that [Plaintiff's] Full Scale IQ (FSIQ) is not an accurate measure of her abilities. Consequently, the various Index scores should be considered individually in conceptualizing [Plaintiff's] abilities.

*Id.* Dr. Driver further commented that Plaintiff's performance on the Delis-Kaplan Executive Function System tests of verbal fluency were consistent with her verbal comprehension IQ score of 70. AR 711. Dr. Driver later reiterated that the FSIQ does not paint an accurate picture of Plaintiff's mental abilities. AR 713. Dr. Driver again commented that the individual index scores should be used because Plaintiff's "cognitive abilities have significant variability." AR 714. Finally Dr. Driver concluded that "although [Plaintiff's] hearing with a cochlear implant was reported as adequate, her ability to receive verbal language appears to be functionally impaired . . . her ability to receive and speak language is a significant weakness for [Plaintiff]" AR 714. Dr. Driver repeatedly noted that Plaintiff's IQ scores should be evaluated with caution, that Plaintiff's composite FSIQ is not an accurate measure of Plaintiff's cognitive capacity, and that the various index scores should be considered individually. AR 710, 713-14. Dr. Driver explained at length why Plaintiff's verbal IQ score is lower then her perceptual reasoning and processing IQ scores. AR 713-14. The ALJ's perfunctory conclusion that because Plaintiff has a hearing impairment her verbal IQ score is invalid is not a sufficient reason, supported by substantial evidence in the record, to reject Plaintiff's verbal IQ score.

The ALJ also noted that Dr. Driver diagnosed Plaintiff with "a mixed receptive and expressive language disorder" as a result of her hearing impairment. AR 16. Before diagnosing Plaintiff with a mixed receptive and expressive language disorder, however, Dr. Driver first

diagnosed Plaintiff with a cognitive disorder, not otherwise specified. AR 714. Dr. Driver further noted that:

> [Plaintiff's] neurocognitive impairments may be due to the result of her multiple and confounding medical conditions. [Plaintiff's] dysfunction, which includes moderate executive dysfunction, language challenges, functional academics, functional communication, language fluency, auditory attention/concentration, and social challenges are all associated with generalized neurocognitive deficits.

*Id.* The Commissioner cites to no case law, nor could the Court find any, that supports the proposition that a secondary diagnosis of mixed receptive and expressive language disorder provides a sufficient reason, supported by substantial evidence in the record, to reject a verbal IQ score. The Court declines to so find in this case.

The ALJ also found that Plaintiff participated in activities that were inconsistent with a verbal IQ score of 70. Specifically, the ALJ found that Plaintiff "volunteers more than sixteen hours a week at her mother's pre-school. She drives, does chores, and uses the computer. She completed high school, and she plans to attend college." AR 16.

First, it should be noted that the ALJ's conclusion that Plaintiff completed high school and intends to go to college is not supported by the record. Plaintiff's modified diploma does not signify a normal high school graduation, nor does it suffice to allow her to enroll in college. AR 619. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (quoting Or. Admin. R. 581-022-1134(2)) ("a modified diploma . . . is conferred on 'students who have demonstrated the inability to meet the full set of academic content standards for a high school diploma even with reasonable modifications and accommodations.'").[5]

---

[5] The version of Or. Admin. R. 581-022-1334(2) (2012) in force at the time Plaintiff was awarded her modified high school diploma is identical to the version quoted by the Ninth Circuit in *Zavalin*.

Further, performing some sheltered, part-time volunteer work and possessing average living skills and the ability to drive is not inconsistent with Listing 12.05C. *See Brown v. Sec'y of Health and Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) (daily activities such as using public transit, driving, making change at a grocery store, doing laundry and cleaning, following a road map, and reading a newspaper are not inconsistent with Listing 12.05C); *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1014 (D. Or. 2001) ("[D]aily activities such as reading, driving, and cleaning are not necessarily inconsistent with [meeting Listing 12.05C]."). Thus, Plaintiff's level of adaptive functioning is not a sufficient reason, supported by substantial evidence in the record, to reject her verbal IQ score as assessed by Dr. Driver.

    **2. Deficits in adaptive functioning initially manifested before age 22**

Although the introductory paragraph of Listing 12.05 is a diagnostic description for intellectual disability rather than a specific criterion, it functions as a substantive requirement. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(A) ("Listing 12.00A") ("If your impairment satisfies the diagnostic description in the introductory paragraph [of Listing 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing."); *Kennedy*, 738 F.3d at 1176. Because the introductory paragraph of Listing 12.05 requires that the "evidence demonstrates or supports onset of the impairment before age 22," the first prong appears "intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010) (citation and quotation marks omitted). The introductory paragraph of Listing 12.05 also provides that "[t]he required level of severity for [Listing 12.05] is met when the requirements in A, B, C, or D are satisfied." Thus, for purposes of Plaintiff's alleged disability, the introductory paragraph (prong one) establishes that a qualifying intellectual disability exists, and the criteria within "C" (prongs two and three) establish its severity.

PAGE 12 – OPINION AND ORDER

Listing 12.05, per its introductory paragraph, requires deficits in adaptive functioning that must have manifested before age 22. Plaintiff filed for SSI at age 18, thus any deficits in adaptive functioning, have necessarily manifested before age 22. Because the severity of the deficits is established by sections A, B, C, and D, the Court does not assess severity in considering whether a claimant meets the requirements of Listing 12.05's introductory paragraph.

Evidence that demonstrates deficits in adaptive functioning may be circumstantial. Relevant circumstantial evidence includes difficulties with reading and writing, attendance of special education classes, and dropping out of school. *McGrew v. Colvin*, 2015 WL 1393291, at *6 (D. Or. Mar. 25, 2015); *Pedro,* 849 F.Supp.2d at 1011-12; *Campbell v. Astrue*, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011); *Payne v. Astrue,* 2010 WL 654319, at *11 (D. Ariz. Feb. 23, 2010). Here, the record shows that Plaintiff attended special education classes, was reading at the eighth grade level when she was 18 years old, did not have to complete any homework, was provided significant accommodation at high school but was only able to achieve a modified diploma, which is provided to students who cannot meet the full academic requirements of high school, even with reasonable accommodation, took numerous tries to pass her driver's license test and only drives with another adult in the car, and lives under the care of her parents. *See* AR 49, 52-55, 71, 154, 245.

Moreover, Plaintiff's RFC, as determined by the ALJ, incorporated such deficits. The ALJ concluded that Plaintiff should be limited to "only brief social interactions with co-workers and supervisors (because hearing and verbal comprehension deficits would preclude more frequent interactions)." AR 16. Accordingly, the evidence in the record, accepted by the ALJ, demonstrates that Plaintiff has deficits in adaptive functioning that initially manifested before age 22.

### 3. Impairment causing additional and significant work-related limitation

A work-related limitation is "significant" "when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). The ALJ's finding at step two that Plaintiff has several severe impairments including a cochlear implant, anxiety disorder, affective disorder, and a history of reticular dysgenesis satisfies the work-related limitation requirement of Listing 12.05C. *See, e.g.*, *Campbell*, 2011 WL 444783, at *18 ("Thus, a finding of severe impairment at step two is a *per se* finding of 'impairment imposing additional and significant work-related limitation of function' as employed in the second prong of Listing 12.05C." (collecting cases)); *see also* Listing 12.00A ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."). Thus, although the ALJ did not discuss whether Plaintiff's impairments caused an additional and significant work-related limitation, the ALJ's findings at step two establish that Plaintiff satisfies the final prong of Listing 12.05C.

### B. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is

insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). It was recently described by the United States Court of Appeals for the Ninth Circuit as follows:

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021.

Here, a remand for an immediate award of benefits is appropriate. The record was fully developed and further administrative proceedings would serve no useful purpose. The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's verbal IQ score. Crediting as valid the verbal IQ score, the ALJ would be required to find, at step three of the sequential analysis, that Plaintiff is disabled under Listing 12.05C for the reasons discussed above. Therefore, the Court reverses the Commissioner's decision and remands for an immediate award of benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for an immediate award of benefits.

**IT IS SO ORDERED**.

DATED this 29th day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge